Thank you. Florence Brummer from Rosenquist and Associates, Phoenix, Arizona, representing the appellant Devon Mitchell. This is a case, your honors, where there was cumulative error and Mr. Mitchell asked that all his convictions be reversed. In this case, extremely prejudicial, not at all probative evidence was introduced to the jury. For instance, there was testimony from Monroe, Yolanda Monroe, who was one of the alleged co-conspirators. If you remember, the other alleged co-conspirator was her cousin, Shannon Scott. Monroe testified that Mitchell told her that he had in the past committed a robbery and went to prison for 10 years. Mitchell had objected to that because he said, hey, number one, I never went to prison for 10 years, so it's not even true. And plus, it's extremely probative and not at all related. It's extremely probative. I'm sorry. Thank you. Extremely prejudicial and not at all related. Well, just indulge me for a moment. Sure. If the two of them are going to stick up a bank, doesn't a prior bank robbery on the resume sort of make it more likely that Ms. Monroe is going to say, well, Mitchell knows what he's talking about when he gives me instructions as to how to do the bank heist, right? It could. It could, but number one, it never was – Monroe never says it's a bank robbery. She says that it was – he went to – that he told her that he went to prison for a robbery, and he also said that he had told her that he had robbed check-and-go places with his boys, was the other quote. But 404B requires that there has to be sufficient evidence for the jury to find that the defendant committed the act, and it was just Monroe saying that we have a problem with Monroe because she had – He told me he robbed an institution. Is not sufficient evidence for the jury to find that he did rob the institution? In this case, no, not at all, because Monroe had told the FBI and the government different things, and she had four or five retalks. But in Jackson v. Virginia, why isn't the flat statement, he told me he had robbed an institution, enough to prove that he had robbed an institution? Well, because there's nothing else connecting except that statement. There's nothing else connecting him to that except for that statement. Why was it offered? Why was it admitted? It was offered. The government had said that it was an admission, and which was strange. An admission of what? They had just called it an admission, and the attorney for the government says it over and over. It's an admission. It's an admission. But, of course, it's not an admission to anything that's happening with the – Well, an admission is a statement that tends to prove guilt in connection with other evidence. Right. So what did the judge say? What was the objection to it? Obviously, it's more prejudicial than probative. The objection was that – and the judge said that it tended to show what the relationship was between – The two of them. Right, exactly. Because it was important to establish a relationship, that the two were working together. That was what the judge ruled. What was the defense? The defense was that – He had nothing to do with it, that they weren't working together. Right. Doesn't that tend to show that they were working together if there was a discussion about robbery? Because the defense was, I have nothing to do with this. Uh-huh. And so here's a statement that says, well, yeah, we talked about the idea of a robbery. Well, the defense had said that it was prejudicial because – Of course it's prejudicial, but does the probative value exceed? And the judge obviously decided it did. The judge decided that it exceeded, but under 404B it doesn't because it also didn't meet any of the other requirements under 404B. Set aside 404B for a second. The defense was, I don't have anything to do with this. I wasn't working with these two people. Uh-huh. And so there's evidence from her that says we had a discussion showing that we were working together on a robbery. But – Doesn't that tend to defeat the defense? Well, there was statements that came in where she says, he told me what to wear and he told me what to do. And so that wasn't objected to. That's admissions. But all these other things, like, for instance, there was that woman who came in and said, I went out with Mr. Mitchell one night and then – Yeah, well, let's stick with the issue that we're talking about. The robbery statements? Yeah. Okay. I mean, it seems to me that it shows that they were working together and I'm beating a dead horse here, and the defense was we weren't. And that's what the judge said. It shows a relationship, and that's what the whole case was all about. But there was no – there was no foundation to it. There was – Foundation. You don't have to have a foundation. He said it to her. Well, such as, you know, when did it happen? It was just a broad statement. He told me that he had – Was there an objection when did this happen? There was an objection under 404B, and one of the elements is that it can't be too remote in time. But that wasn't an objection. So then what did the judge tell the jury? Was there a limiting instruction requested by the defense? I don't believe so. I didn't see one. What did the judge tell the jury when this came in? Nothing. There was pretrial motions, and it was allowed in. There was quite a few sidebars, but the jury wasn't instructed one way or another about it. But the judge says it shows a relationship. Right. Exactly. Exactly. And not only is there that that came in, there was also the woman who came in and said the night that she went out with Mr. Mitchell, and then the next day her purse was gone. And that was objected to as well. And that came in. And that had nothing to do with anything, and that was very prejudicial. Also, there was that – There was an objection to that? Yes, there was. On what ground? Irrelevant, immaterial, prejudicial? Yes. And what was the response from the government? The response from the government was that – I can't recall on that one. You know what, Your Honor? I can't recall on that one. Okay. Because we like to know context. Sure. There was also evidence that Ms. Monroe testified to this trip where the parties went to Page, Arizona, and Mr. Mitchell allegedly sold some drugs to someone up there. And, again, the defense argued 404B, improper 404B, and the judge let it in based on the relationship. He had also said something along the line of, well, it shows the motive of the women as to why they were involved. Something along the lines of maybe they were scared because he was selling drugs or something like that. And the drug sale, of course, had absolutely nothing to do with a bank robbery. And it was allowed in, and there was no limiting instruction given at all. Not only did all this improper evidence come in, but the jury was instructed improperly on both counts three and four, which were number three is the armed robbery and number four is 924C. And the government acknowledged it was the 924C firearm in connection with a crime of violence. The government acknowledges that the armed robbery charge instruction was improper. It missed an entire element. In fact, it was almost the robbery instruction. It missed the element of assault of teller or places teller's life in jeopardy. And the defense objected, and the judge said, well, I'm going to leave it as is. Who submitted that instruction? I'm not sure who submitted it. I think the — I don't know if the court had done it or if the state had done it, but when they were discussing it, the defense said it's missing an entire element. And the government, I don't think, responded at all to that it was missing an entire element. But then in the brief acknowledges that it was. So what happened was the jury says, well, I'm going to find him guilty under the greater included and lesser included, and it's both pretty much the same instruction. And so the judge kept it in place that he was found guilty of the armed robbery. The state argues that it's okay that that instruction was given that way, says that it's harmless error because there was overwhelming evidence. Overwhelming evidence of what? Of that he was involved in the — with the gun. That he gave her a gun that was put in her purse simply because she might have to use it. But, Your Honor, it wasn't him who gave it to her, and she never testifies that. She says it's that gentleman Towne. Who's now dead. Right, exactly, that he hands her the gun. Her testimony is that Mitchell's driving the car. Towne's in the passenger seat. She's in the back. He says take this if you have to use it. She never says. It's not crucial or critical that Mitchell gave her the gun. The charge was that she was using a gun in an armed robbery and that he was aiding and abetting the use of that gun because he was present when it was given to her with the exhortation that she use it if necessary. Well, the government had to prove that the defendant knew the principle, possessed and intended to use the gun, and that the defendant intended to aid in that endeavor. And none of that was shown because what Monroe testifies to is that Mitchell's sitting there and doesn't say anything. Where'd Towne come from? Did he just drop in on a parachute or was he doing it in the car? No, I guess Towne and Mr. Mitchell were friends before Mr. Towne died. Doesn't silence under those circumstances allow a rational person to conclude consent? Well, maybe, but the jury isn't ever instructed about the gun part of armed robbery, so they don't even get to make that decision. Wasn't there a demand note that Mitchell wrote according to bank robbers that stated, I have a gun? That's correct. That's correct. But Monroe's testimony doesn't tie Mr. Mitchell to the actual gun. She just says that he's in the front seat. And also, you know, Mr. Mitchell's defense, of course, was that he wasn't even there. And there were two independent witnesses, a Ms. Phelps and a Mr. Cain, who were outside the bank when all the money was blowing and the red smoke was blowing, and they said they only saw a driver, a black man driving the car. They never see two men in the car, which goes towards Mr. Mitchell's story that he wasn't even there. Going back to what Judge Connell said just a moment ago, isn't it pretty good evidence that Mitchell knew a gun was being used in the heist when he writes a note that Monroe was going to use in the bank saying, I have a gun? No, not at all. It's just happenstance? Well, if the court knows we have problems with the whole thing, it's just a matter of the whole handwriting expert and a dauber hearing wasn't done. That's a different issue. And so without saying, yes, he wrote the note, because, you know, he has always said throughout that he hasn't, but for the sake of argument, if he wrote the note saying that there's a gun, it still doesn't say that it still doesn't meet the standard that he knew that she possessed and intended to use the weapon and that he intended to engage in that endeavor, just because there's a note that says that. Because her testimony never ties him to the gun. She has Towne handing it to her, and she says Mitchell never says anything, does anything, nothing. How did she get the note? How did she get the note? Her testimony was that he wrote it and gave it to her. Do you wish to reserve any time? May I reserve my last minute? Thank you. May it please the Court. My name is Carla Hodes DeLore. I'm an assistant U.S. attorney representing the United States in this matter. I'd first like to address the evidentiary rulings that opposing counsel brought up. First of all, the statements that the Court admitted regarding the defendant's statements that he had been in prison before and that he had previously committed armed robbery and had robbed check-and-go places, these were definitely admissible as being more probative than prejudicial. Of what? Probative of what? It is probative of the relationship he had with his co-conspirators. Is that what your side argued to the Court? Yes, exactly. It was probative of the relationship? Exactly. Because what happened is it showed the relationship of how when they first met, they first started going and how he was organizing them and recruiting them into his criminal lifestyle. At first, they started off with the selling of the drugs. He was in charge of coordinating that. And then it gave him, when he was trying to recruit them into robbing banks for him, it was giving him a sense of credibility. Look, I've robbed banks before. It's easy. You can make $2,000 to $10,000 in a matter of seconds and a few minutes without anyone getting hurt, and here's how you do it. So these statements were statements by him, and they gave him the credibility that he knew what he was doing and that this is why they went along with his plans and why they robbed banks for him. Were you the trial lawyer in this case? No, I was not. Did your side explain all of this to the court in the process of arguing this objection out? Yes. The other side said all you did was say admission, admission, admission, and sit down. No, the government argued that it was more probative than prejudicial and that it went to, and as the court found, it went to the relationship that the defendant had with his co-conspirators. And with respect to the testimony regarding Georgia Chavez and the fact that she had her purse stolen and her exotic dancer license stolen, how that came about was this. The government intended to call Georgia to establish that the defendant drove a blue PT cruiser and she went out with him in that blue PT cruiser. The defense asked the court to preclude any testimony regarding the stolen purse, saying it's not relevant. The government said we're not going to bring up the stolen purse. On direct examination, the court established through her testimony that she, in fact, went out with the defendant and that he was driving the blue PT cruiser. On cross-exam, what happened is the defense started asking her questions as to when did you go out with him, was it 2004, 2005, and she couldn't really remember. She said, well, I think it was 2005, it might have been 2004. What happened then is on redirect, the government said, when did you go out with the defendant when he drove the blue PT cruiser? Again, she thought it was 2005. And then he said, was your purse missing after that night and your license missing after that night? And she said yes. And the reason the government brought that up is because when the defendant was subsequently arrested in August of 2005, he had Georgia's exotic dancer license in his wallet. So the government was introducing that evidence to show the timeframe of when she went out with the defendant and not the fact that he had stolen her purse or her evidence, but it established the fact that, yes, it was in 2005 because shortly thereafter, he had her license in his pocket. So it was to not show that it was a whole year earlier that that happened. So her whole testimony was admitted to prove that. He had a license in his pocket, whether it happened in 2004 or 2005, right? Theoretically, yes, that could have happened. But, you know, it's unlikely someone would be carrying it around for a whole extra year. Was there any other defense to mention of anything involving a stolen purse? The defense, yeah, he said he. And what was the government's position on that? The government said that, look, we introduced this to us, you know, we're introducing this to establish the fact that the defendant drove the P.T. Cruiser and this is the timeframe that she knew when he drove the P.T. Cruiser. Established the timeframe, whether it was 2004, 2005, made some difference. Well, it just, it was going, it was introduced to show that it was a recent event and that she had recently gone out with him and had that happen. Yes, I mean, it's likely, sure, he could have carried the license around for an entire year, but it was the main purpose of her being, her testimony being admitted was to establish that he drove the blue P.T. Cruiser. The defendant filed a motion in limine to try to keep a lot of the stuff out of the trial. Did your side file a brief in opposition to the motion in limine or just argue in court when it came out? No, we filed, I believe we filed a response, but I could be mistaken on that. But I know that we did argue that it was all, at least the prior testimony regarding the armed bank robbery and the fact that he robbed check and go places was probative of the relationship. As far as the instructions were concerned with regards to the armed robbery count and the 924C, possession of a firearm in relationship to a crime of violence, you had asked who had submitted the instruction regarding the armed robbery count. Both the defense and the government submitted proper instructions that contained all of the elements regarding armed bank robbery. When the judge put forth his proposed instruction on armed bank robbery, the defense said to the judge, you're missing the last element that distinguishes armed bank robbery from bank robbery. And your side knew that that was right? The government agreed that they were missing the last element, but the judge said I don't think it's necessary and he went ahead and gave the instruction without that last element. Big mistake? It is a mistake. That was a mistake. However, it's harmless because that element was never in dispute. The defense never contested any of the elements of bank robbery nor any of the elements of the armed bank robbery. And in fact, in the closing argument, the defendant specifically stated that, I'll quote it. Wait a minute. Time out. What's the element that was missing? The element that was missing was the last element that distinguishes armed bank robbery from bank robbery. And that was this. That in committing the bank robbery, the defendant assaults any person or puts in jeopardy the life of any person by the use of a dangerous weapon or device. And you have to prove that he knew. Correct. The government has to prove that the defendant knew that the principal had and intended to use the gun. That wasn't in dispute? No, it wasn't in dispute. So the defendant admitted I knew. No, no, no. I'm sorry. Let me backtrack. Maybe I've mischaracterized my answer. The defendant never contested that a gun was involved and never at all. He said I had no idea. He said I wasn't there. I had no idea. So he never contested that on appeal he's now contesting that, you know, I didn't know that she had and intended to use a gun. But down at the trial, no, he never contested that. He said he wasn't there. He wasn't there. That's pretty good contesting. Okay, well, I guess. Because I was in Cleveland. I guess I wasn't viewing him that way. So, yes, I guess in that respect. But he didn't. Right. I guess he's contesting it in the general sense. He said I was there, but there was no gun involved. He just says I wasn't there. But I apologize. I'm sorry. It raises the issue. Okay, it raises the issue. But the fact is, is the government definitely put forth sufficient evidence to establish that he knew that she knew and intended to use a gun. What was the evidence? The evidence was this. Before she went in to rob the Compass Bank. The evidence is in the form of Monroe's testimony. The evidence is Monroe's testimony. Very reliable, believable testimony. Well. She lied all over the place. Denied that Mitchell had anything to do with this. At the beginning. Until she gets a deal. And now Mitchell is involved. Well, but there's plenty of evidence, other evidence, to corroborate her testimony. She testified that before she went into the bank, the defendant was the driver. His cousin, Towne, was the front passenger. She was in the back seat. Before she went into the bank, Towne handed her a gun, said, Take this just in case. What about her testimony that she originally denied to the investigating officers? She originally, well, she originally, she always testified that the defendant drove her to and from the robberies. But then she said it was Shannon that was involved or Shannon committed them. But what happened is, after she robbed the bank, then she, there were witnesses that testified that they saw her getting into a blue PT cruiser and that they saw that there was a black man that was the driver of it. Did anybody identify him? No. No. They didn't. They said that. She then testified that what happened is when she got in the car and told them that she had lost the gun, that the defendant got out of the car, Towne moved over to the driver's seat, she and Towne drove away. The defendant then went to the scene in an effort to retrieve the gun. And the police officer couldn't identify him either. Right. That is correct. And he testified, but you had the fact that you have Yolanda over here testifying that the defendant got out and tried to retrieve the gun. Who? Yolanda Monroe. Another very wonderful woman. Well, she's the one who did the bank robbery. And then you have the other witness saying that, you have two witnesses saying how the defendant came up and was acting, or excuse me, how a black man, a tall black man, excuse me, came up and said he was trying to, acting not in the most normal way, trying to say I'll take it from here and, you know, wanting to try in an effort to retrieve the gun. So. You know, I know it's not very easy to stand there and tell a district court judge you're making a big mistake, but you just have to. Well. But you told him on the other one and he didn't pay any attention. That is true. I mean, that happened. And they tried to set forth the correct instructions and they tried to argue as best they can. But the thing is, is even though there was error in giving the instruction, it was harmless error. So given the evidence presented and that establishes this was harmless error about this instruction. Let's see. And like you said, as counsel said, Yolanda's testimony didn't tie the defendant to the gun, but it did in fact tie the defendant to the gun by the fact that he was in the car, he knew she took the gun. In his presence, she had the demand note that he had written that says, I have a gun. She then went into the bank. And the defendant knew she had the gun, intended she used it by the fact that he wrote the note, she went in the bank, and then the fact that he waited for her afterwards. If you don't have the note, what kind of a case do you have? If you don't have the note, you have, well, if she took, if she put the gun in her purse and went in and did not make a reference to it and no one knew about that, then I think because no one knew about it, it could be more difficult to do the armed bank robbery. I don't know the fact that. If you don't have the note, you have a terrible case involving awful witnesses and nobody otherwise to identify this man. If we don't have the note, there is still, like I said, there is still other evidence. You still have the Yolanda and Shannon's testimony, which was they corroborated each other's testimony and they corroborated each other's testimony and there was other evidence to corroborate their testimony. The fact that you have the defendant driving the blue PT Cruiser, he admitted he drove the blue PT Cruiser. When the FBI arrested him, he was driving the blue PT Cruiser and that's what the witnesses had seen driving away from the armed bank robbery. You had, when the FBI asked the defendant, he admitted he drove the blue PT Cruiser. They even specifically asked him, has anyone else driven this car? And he said, Yolanda and Shannon drove it once to do drugs. He never said his cousin did it. And then you have the, like I said, the other witnesses seen at the scene, their testimony matching what Yolanda's testimony said about the defendant trying to get the gun. And then you have also Yolanda's testimony about the defendant stopping by in a rented gray Suburban before he took off for California and then the rental car records supporting that. What's interesting is in state court, pursuant to 1111 of the California Penal Code, you don't have a case at all without the note. I think that there's sufficient. It's an accomplished testimony and there's nothing else that corroborates it. I think that the other evidence does submit it, can corroborate their testimony. And the fact is, is the defendant cross-examined both Yolanda and Shannon. He cross-examined them for an hour and he brought out all sorts of things. He brought out the terms of her plea agreement, the fact that she had lied to the government, her motivation to talk to the FBI, the fact that she had used drugs, and he was impeaching Shannon as well. And then in closing argument, the defendant brought up all the evidentiary arguments he's now raising to this court. Look, the cell phone records don't count. You can't believe Yolanda and Shannon's testimony. The FBI was sloppy in their investigation. You can't rely on the handwriting note. There's this known rate of error. The defendant argued all of that to the jury and the jury still came back and found sufficient evidence to convict him of the bank robberies, the armed bank robberies, and the 924CE count. Do we have to find the error, the instructional error, harmless beyond a reasonable doubt? Yes. There was error. And in order to proceed, you would have to find that it was harmless in this case. And it is harmless. The government presented sufficient evidence and the defense presented all of their evidence trying to negate it, and the jury still came back and said we find sufficient evidence, and we convicted him. And, you know, if you look at the, like I said, his whole defense was one of misidentification. It wasn't me. I just wasn't there. But he didn't get into the nitty-gritty of each element and specifically objecting to him as he is now on appeal. So for these reasons, this Court should affirm the convictions and sentences of government. Ms. Brewer. Thank you, Your Honors. In one breath, the government says that Chavez was used to connect Mitchell to the blue PT cruiser, but then they also say that Mitchell admitted that he drove it. So why did we need Chavez? We don't need her at all. This is the lady with the purse. And it's just to show he's a bad man. The government, right before the case, submitted the Thongzi case to the court. In that case, the 924C instruction was the same as the one given by the district court, and it was found in error in Thongzi, but in that case it was found to be harmless error. This case cannot be harmless error because in Thongzi he was pretty much arrested next to the gun, next to the drugs, all in intent, everything's together. This was a gun that was found in Mitchell's case. It was a gun that was found by the police. Mr. Mitchell was nowhere around it. And, again, in 924C, mere presence and planning is not enough. And I believe I'm out of time. Thank you very much. Thank you. All right. The court will take a 10-minute recess now, and we'll be coming back here at 11 o'clock in order to hear the last case, Aguro v. Woodford.
judges: Trott, Bea, Conlon